Case 1:08-cv-00145-GJQ ECF No. 1, PageID.1 Filed 02/11/08 Page 1 of 8

FILED - GR
February 11, 2008 3:33 PM
RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: ___rmw____/_____

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **Lindsay Puisis,**<br><br>           Plaintiff,<br><br>v.<br><br>**Central Credit Services, Inc.,**<br>a Florida corporation,<br><br>           Defendant. | Hon.<br><br>**1:08-cv-145**<br>**Gordon J Quist**<br>**US District Judge** |

Complaint

I. Introduction

1. This is an action for damages and declaratory relief, brought against a debt collector in response to the debt collector's practices which violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Collection Practices Act ("MCPA"), M.C.L. § 339.901 *et seq.*

II. Jurisdiction

2. This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. § 2201. Venue in this judicial district is proper because the pertinent events took place here.

III. Parties

3. Plaintiff Lindsay Puisis is an adult natural person, residing in Muskegon County, Michigan. Ms. Puisis is a "consumer" and "person" as the terms are defined and used in the

1

FDCPA. Ms. Puisis is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA.

4. Defendant Central Credit Services, Inc. ("CCS") is a Florida corporation, doing business at 67 Charleston Square, St. Charles, Missouri 63304, and elsewhere. The registered agent for CCS in Michigan is LexisNexis Document Solutions, Inc., 601 Abbott Road, East Lansing, Michigan 48823. CCS is a "debt collector" as the term is defined and used in the FDCPA. CCS is a "collection agency" and a "licensee" as the terms are defined and used in the MCPA.

**IV. Facts**

5. In or about October of 2005, Ms. Puisis purchased a Pontiac motor vehicle on credit from Betten Chevrolet, Inc. ("Betten"). Ms. Puisis' father co-signed for the loan. The credit sale was accomplished through use of a retail installment sales contract. The contract named Ms. Puisis as the borrower and her father as a co-obligor. The contract named Betten as the creditor. Ms. Puisis purchased the Pontiac for personal, family and household purposes. Any resulting obligation to pay money was a "debt" as the term is used in the FDCPA and MCPA.

6. Betten assigned the contract to Wells Fargo Financial ("WFF").

7. On or about June 12, 2006, WFF wrongfully caused the Pontiac to be repossessed from Ms. Puisis. The repossession constituted conversion under Michigan law.

8. WFF later apologized to Ms. Puisis and had the repossession company return the Pontiac to her. However, the Pontiac was returned with substantial damage that was not present prior to the unlawful repossession and conversion.

9. WFF refused to repair the Pontiac.

10. Ms. Puisis tendered her monthly payment to WFF, but WFF refused to accept payment.

11. Ms. Puisis denies owing anything to WFF or to anyone else in connection with her credit purchase of the Pontiac.

12. Apparently, WFF later wrote off and sold the alleged debt to a company named Arrow Financial Services LLC ("Arrow"). Arrow is in the business of purchasing allegedly delinquent consumer debt, typically paying less than five cents on the dollar, and then attempting to collect the debt. Arrow is a "debt collector" as the term is defined and used in the FDCPA.

13. Apparently, Arrow hired CCS to attempt to collect the disputed debt from Ms. Puisis and her father.

14. Beginning in or about January of 2008, CCS on multiple occasions communicated by telephone with Ms. Puisis and her father and demanded payment of the disputed debt, CCS "File No. 3636595."

15. In the conversations, CCS employees made the following false misrepresentations to Ms. Puisis:

   a) A judgment was going to placed against Ms. Puisis.

   b) Ms. Puisis did not have a valid reason to dispute the debt.

   c) Derogatory information regarding the debt was currently being reported by the consumer reporting agencies on her father's credit report, and that if the debt remained unpaid, the derogatory information would remain on his credit report forever.

   d) Ms. Puisis and her father were about to be sued to collect the debt.

3

e) Arrow has the right to place a lien against Ms. Puisis' father's home and property to secure payment of the debt.

f) Arrow was going to place a lien against Ms. Puisis' father's home and cause problems between him and his mortgage company.

g) Arrow was going to request enforcement of garnishment of Ms. Puisis' father's wages.

h) CCS already had "signed off" for legal proceedings against Ms. Puisis and her father.

i) CCS had recorded its prior telephone calls with Ms. Puisis and was going to "use it as evidence against" Ms. Puisis and her father.

Ms. Puisis expressly warned CCS to stop calling her father at his place of employment because her father's employer does not allow employees to take calls from debt collectors while on the job, the calls were not convenient for her father, and the calls were harming her father's relationship with his employer. Hearing that, the CCS employee repeatedly laughed at and taunted Ms. Puisis and stated that CCS would not remove her father's work number from its call list and represented that the calls to his place of employment would continue. When Ms. Puisis continued to warn CCS not to contact her father through his employer, the CCS collector stated, "actually, they are doing a verification of employment as we speak," falsely representing or implying that CCS was in continued contact with Ms. Puisis' father's employer. After putting Ms. Puisis on hold, the CCS collector stated that he had just spoken with his client and was told that a decision had been made to sue Ms. Puisis and her father.

16. The Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, states that no consumer

4

reporting agency may make any consumer report containing information regarding "accounts placed for collection or charged to profit and loss which antedate the report by more than seven years." 15 U.S.C. § 1681c(a)(4). The running of the seven-year period begins "upon the expiration of the 180-day period beginning on the date of the commencement of the delinquency which immediately preceded the collection activity, charge to profit and loss, or similar action." 15 U.S.C. § 1681c(c)(1).

17. CCS misrepresented the length of time for which derogatory information regarding the debt could remain on Ms. Puisis' father's consumer report.

18. A debt collector may not communicate with a consumer in connection with the collection of any debt at a time or place known or which should be known to the debt collector to be inconvenient to the consumer. 15 U.S.C. § 1692c(a)(1).

19. A debt collector may not communicate with a consumer in connection with the collection of any debt at the consumer's place of employment if the debt collector knows or has reason to know that the consumer's employer prohibits the consumer from receiving such communication. 15 U.S.C. § 1692c(a)(3).

20. It is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5). CCS and its employees repeatedly threatened to take action that could not legally be taken and/or that CCS and its employees did not intend to take, in order to coerce Ms. Puisis into paying a disputed debt.

21. CCS failed to send Ms. Puisis a writing that complied with 15 U.S.C. § 1692g.

22. The unlawful debt collection methods, acts and practices of CCS and its employees were willful. The violations of the FDCPA and MCPA by CCS and its employees

were willful.

23. As an actual and proximate result of the acts and omissions of CCS and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, stress, mental anguish, emotional stress, and suffering for which she should be compensated in an amount to be established by jury and at trial.

## V. Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

24. Plaintiff incorporates the foregoing paragraphs by reference.

25. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

   a) Defendant violated or threatened to violate 15 U.S.C. § 1692c(a)(1).

   b) Defendant violated or threatened to violate 15 U.S.C. § 1692c(a)(3).

   c) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

   d) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

   e) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

   f) Defendant violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3);

c) A declaration that defendant's practices violate the FDCPA; and

d) Such further relief as the court deems just and proper.

## Count 2– Michigan Collection Practices Act

26. Plaintiff incorporates the foregoing paragraphs by reference.

27. Defendant has violated the MCPA. Defendant's violations of the MCPA include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

b) Defendant violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

c) Defendant violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt, including causing a telephone to ring or engaging a person in telephone conversation repeatedly, continuously, or at times or places which are known to be inconvenient to the debtor; and

d) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendant for:

a)   Actual damages pursuant to M.C.L. § 339.916(2);

b)   Treble the actual damages pursuant to M.C.L. § 339.916(2);

c)   Statutory damages pursuant to M.C.L. § 339.916(2); and

d)   Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: February 11, 2008

*/s/ Phillip C. Rogers*
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com